IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| RICKIE A. WHEAT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 6:09-CV-03142-DGK |
| PHILIP MORRELL, and WHISPERIDE, LLC, | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT ON COUNTS IX AND X

This case arises from a business relationship between the parties. Plaintiff Rickie Wheat alleges Defendants Philip Morrell and Whisperide, LLC owe him approximately $800,000 for services rendered and personal property delivered to Defendants, and $4,000,000 for conversion of a patent on a horse bridle and also trademark infringement.

Presently before the Court is Defendants' Motion for Partial Summary Judgment on Counts IX and X (doc. 109). Finding that by his conduct Plaintiff communicated his consent to use the patent and trademark at issue here, the motion is GRANTED.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the

nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

Viewing the evidence in the light most favorable to Plaintiff Wheat, for purposes of resolving the pending motion the Court finds the facts to be as follows. The Court has omitted properly controverted facts, facts immaterial to the resolution of the pending motion, and argument.

Plaintiff Rickie Wheat ("Wheat") alleges that Defendants Philip Morrell ("Morrell") and Whisperide, LLC ("Whisperide") infringed on Wheat's patent (U.S. Patent No. 6,643,999; "the Patent") and Noavel® trademark (U.S. Reg. No. 2,709,176; "the Trademark") by manufacturing, importing, offering for sale, selling, and using Noavel Headstalls that he alleges are encompassed by the Patent.

Late in 2007, Morrell established Whisperide to market and sell the Noavel headstall. Wheat attended the initial strategy meetings establishing Whisperide and formulating its business plan. Wheat knew that "Phil Morrell was to do the marketing part. He was going to do the marketing part and … he was going to basically sell the product. … And I was going to basically

teach people how to do what I do, the clinics, which I was doing that." Wheat provided his dealer list to Mr. Morrell to facilitate Whisperide's marketing and sale of the Noavel headstall.

Morrell paid both the start up costs involved in forming Whisperide and the expenses incurred while the company was in operation. Wheat knew of and actively participated in Defendants' efforts to develop a marketing and distribution system for Noavel headstalls, including appearing in promotional videos and attending Whisperide's organizational meetings. Wheat spent six days in Salt Lake City filming the promotional videos, and even stayed in Defendant Morrell's home during that time. These marketing videos were produced with Wheat's consent.

Although Wheat voiced objections at certain of Whisperide's organizational meetings, these objections were limited to concerns over the qualifications and experience of some of the personnel who would be demonstrating the headstall, not to Defendants' right to make, use, offer to sell, or sell Noavel headstalls under both the Patent and the Trademark.

Wheat knew of Defendants' sales of the Noavel headstall and participated in the sales process by holding clinics and selling headstalls on Whisperide's behalf. Wheat knew by early 2008 that Whisperide was having Noavel headstalls produced. Wheat signed a check to purchase raw materials to be used by Defendants to manufacture Noavel headstalls. Wheat acknowledged Whisperide's purchase of materials from the very same sources of supply that Wheat had previously used once Whisperide had taken over the manufacturing functions from Wheat. Penelope Wheat, Wheat's wife, testified that Whisperide's efforts to produce and market Noavel headstalls were, to her knowledge, done with her husband's knowledge and consent.

As of May 31, 2008, Defendant Phil Morrell had personally invested $1,296,083 in capital in the Whisperide business in reliance on Wheat's consent to the formation and conduct

of that business to sell products under the Patent and the Trademark. Defendants Morrell and Whisperide have lost over $2 million from their business operations involving the Noavel headstall.

## Discussion

**A.     Summary judgment is granted on the patent infringement claim.**

Count IX is a claim for patent infringement. Wheat alleges that "Defendants Morrell and Whisperide are infringing on the Patent by manufacturing, importing, offering for sale, selling and using bit-less bridles and related products which embody the invention covered by the Patent, all without authority from Wheat." First Am. Compl. ¶ 84. Defendants argue that by his words and conduct Wheat gave them an implied license to commercialize the bit-less bridle technology, thus they are entitled to summary judgment on Count IX.

United States patent law gives a patentee the exclusive right to exclude others from making, using, selling, offering to sell, or importing a patented invention. 35 U.S.C. § 154(a)(1). This exclusionary right, however, may be waived by granting a license to practice the patent, and a license grant may be expressed or implied. *Winbond Elec. Corp. v. International Trade Commission*, 262 F.3d 1363, 1374 (Fed. Cir. 2001). No formal granting of a license is necessary. Any language or conduct by the owner of a patent from which one can properly infer that the owner consents to his making, using, or selling the patent constitutes a license, and is a defense. *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).

An implied license is a complete defense to a patent infringement claim. *Carborundum Co. v. Molten Metal Equip.*, 72 F.3d 872, 878 (Fed. Cir. 1995). An implied license may arise by equitable estoppel, acquiescence, legal estoppel, or conduct. *Winbond*, 262 F.3d at 1374. To prove an implied license by equitable estoppel the alleged infringer must show (1) the patentee,

4

through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on the statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its patent infringement claim. *Id.*

Applying this theory to the facts in this case, the Court finds Defendants have established an implied license by equitable estoppel and are entitled to summary judgment. With respect to the first element the record amply demonstrates that Wheat, through his words and conduct, communicated to Defendants his consent and permission to commercialize the bit-less bridle technology under the Patent. Wheat not only knew of the alleged infringing activities, he actively participated in them. Wheat participated in Defendants' sales of Noavel headstalls by holding clinics and selling headstalls for Whisperide; appeared in Whisperide's promotional videos; and signed a check to purchase raw materials used by Whisperide to manufacture Noavel headstalls once Whisperide "took over" those functions from Wheat. Wheat also knew of and participated in Defendants' efforts to develop a marketing and distribution system for the Noavel headstall, including attending Whisperide's organizational meetings and providing his dealer list to Morrell in order to facilitate Whisperide's marketing and sales efforts. As to the second element, the Court finds Defendants materially relied on Wheat's affirmative conduct. Defendants formed a company to manufacture and sell the Noavel headstall, and in so doing exposed themselves to liability. Defendants also incurred significant costs necessary in establishing both manufacturing and distribution channels for the headstall product. From these facts the Court also infers that Defendants would be substantially prejudiced if Wheat were allowed to attempt to impose liability on them for their authorized activities. Accordingly, the

5

Court finds that Defendants are entitled to summary judgment on the patent claim under the doctrine of implied license by equitable estoppel.

**B.      Summary judgment is granted on the trademark infringement claim.**

Equitable estoppel also serves as a complete defense to Plaintiff's claim of trademark infringement. *See* McCarthy, J.T., *McCarthy on Trademarks and Unfair Competition*, § 31:42 (4th Ed. 2010) (noting "[a] plaintiff cannot indicate at one time to defendant that defendant's acts are acceptable and then later sue defendant after it has acted in reliance on plaintiff's implied assurances."). This defense is particularly appropriate when the trademark owner actively encourages the allegedly infringing activity. *Id.* at 31-112.1.  In the trademark context this defense requires essentially the same elements of proof as in the patent context: (1) misleading conduct, which includes statements and action and silence and inaction, leading another to infer that rights will not be asserted against it, (2) reliance upon this conduct, and (3) due to this reliance, material prejudice will result to the other party if the delayed assertion is permitted. *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992).

Here Wheat, through his words and actions, communicated to Defendants his permission to use the Trademark.  Although Wheat clearly was keenly aware of Defendants' actions, he did not object, he actively participated in them.  Wheat helped sell Noavel headstalls for Whisperide; he appeared in Whisperide's promotional videos; and he attended Whisperide's organizational meetings.  Defendants materially relied on Wheat's actions by investing large amounts of money into the business, thus Defendants would be materially prejudiced if Wheat were allowed to claim that Defendants were infringing on the Trademark.  Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's trademark claim.

**Conclusion**

Defendants' Motion for Partial Summary Judgment (doc. 109) is GRANTED. Defendants are granted summary judgment on Counts IX and X.

**IT IS SO ORDERED.**

Date:  January 19, 2010                         /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT